**McDERMOTT WILL & EMERY LLP**
A. Shane Nichols
1180 Peachtree Street, NE, Suite 3350
Atlanta, GA 30309
Tel:  (404) 260-8535
Fax:  (404) 393-5260

Jason Gerstein (*pro hac vice* pending)
One Vanderbilt Avenue
New York, NY 10017
Tel:  (212) 547-5400
Fax:  (212) 547-5444

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| MERCER GLOBAL ADVISORS INC., | |
| Plaintiff, | |
| | Civil Action No. _____ |
| v. | |
| CHARLES CROWLEY, | **COMPLAINT** |
| Defendant. | |

Plaintiff Mercer Global Advisors Inc. ("Plaintiff" or "Mercer"), by and through its undersigned attorneys, as and for its Complaint against Defendant Charles Crowley ("Defendant" or "Crowley"), alleges and sets forth as follows:

## NATURE OF THE ACTION

1.    Mercer provides financial planning, investment management, and other financial services to individuals and businesses across the United States.  Crowley joined Mercer as a Wealth Advisor[1] on or around January 1, 2021 pursuant to Mercer's acquisition of substantially all of the assets of Crowley's prior employer, Atlanta Financial Associates, LLC ("AFA"), including its client lists, client relationships, and all other rights and properties.

2.    On December 21, 2020, Crowley executed an Employment Agreement ("EA") and a Restrictive Covenant Agreement ("RCA") with Mercer.  Ex. A.[2]

3.    As detailed further below, Crowley's agreements with Mercer prohibited him from copying Mercer's Confidential Information (which includes proprietary and trade secret information) and from using the Confidential Information for any purpose except to advance Mercer's business, both during and

---

[1] Crowley's initial job title of "Client Advisor" was later modified to "Wealth Advisor," a change implemented across the organization.  No changes to the job duties or responsibilities were made as a result of this change.

[2] Exhibit A is a single document comprised of both the Employment Agreement and the Restrictive Covenant Agreement.

after his employment.  The agreements explicitly prohibit Crowley from soliciting the Mercer clients with whom Crowley worked or gleaned confidential information about as a result of his employment with Mercer.

4.      Nonetheless, in contravention of his EA, the RCA and the fiduciary duties owed to his former employer, Crowley copied Mercer's Confidential Information and used it in his efforts to solicit Mercer's customers away from Mercer, both while he was still employed by Mercer and again following his resignation.  Crowley's unlawful conduct further included making false statements regarding Mercer to Mercer's clients.  Such statements appeared designed to make the clients' continued relationship with Mercer less likely and less desirable.

5.      Defendant's unlawful conduct has caused significant and irreparable harm to Mercer and, if not enjoined, will cause serious additional harm.

6.      Mercer seeks injunctive and monetary relief against Crowley for breach of contract, trade-secret misappropriation under the Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760 *et seq.*, tortious interference with business relations, tortious interference with contract, and breach of the duty of loyalty.

## PARTIES

7.     Plaintiff Mercer Global Advisors Inc. is a Delaware lcorporation with its principal place of business in Denver, Colorado, and offices across the country, including at 5901-B Peachtree Dunwoody Road, Suite 275, Atlanta, GA 30328.

8.     On information and belief, Defendant Charles Crowley is a citizen of the United States and is domiciled in the State of Georgia, residing at 520 Rose Border Drive, Roswell, GA 30075.

## JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over Defendant because Defendant resides and transacts business within the State of Georgia, and committed the wrongful conduct alleged herein in the State of Georgia.

10.     Further, Crowley contractually waived all objections to personal jurisdiction in this Court.  Ex. A at 13, 14 (§ 14 of RCA).

11.     This Court has subject matter jurisdiction because Plaintiff and Defendant are diverse, and the amount in controversy, including the prevailing party's entitlement to recover its costs and attorneys' fees (Ex. A at 13 (§ 12 of RCA)) exceeds $75,000.

12.     Venue in this Court is proper under LR 3.1(B)(1)(a), NDGa, because, on information and belief, Crowley resides in Fulton County, a county within this

District.  Alternatively, venue is proper under LR 3.1(B)(3), NDGa, because the wrongful conduct giving rise to the causes of action stated herein occurred in this District.

13.    Further, "the exclusive venue for any disputes arising out of or related in any way to" the RCA "shall be . . . the United States District Court for which the Mercer Advisors Atlanta Financial Associates office is located."  Ex. A at 13-14 (§ 14 of RCA).  The Mercer Advisors Atlanta Financial Associates office is located within this District.

## FACTS

### Mercer's Business and M&A Strategy

14.    Mercer provides financial planning, investment, and other financial services to individuals and businesses across the United States.  Founded in 1985, Mercer is one of the nation's most recognized names in investment management, managing approximately $31 billion in assets.

15.    Mercer invests tens of millions of dollars in time and resources to developing and maintaining existing and prospective client relationships.  Mercer's client-acquisition costs are high, and it dedicates significant resources to acquiring new clients in the hypercompetitive financial services industry, including by acquiring or merging with other wealth management firms.  To safeguard this

investment, Mercer requires all of its new employees, as a condition of employment, to sign certain agreements that clearly identify the proprietary and confidential nature of its client lists and information.

16.    Mercer entered the M&A market in 2016, and since that time has completed 46 acquisitions adding approximately $16 billion in assets under management ("AUM").  Mercer takes care when evaluating whether to acquire a particular firm.  Its decision whether to acquire is based on each target firm's pro forma profitability, which is highly dependent on the target's AUM and revenue retained after closing.  These figures, in turn, form the basis of each acquisition's carefully negotiated purchase price.  As such, any post-closing reduction of revenue due to the loss of one or more clients results in a much greater reduction in profit realized from the acquisition, and Mercer, as a result, takes a significant loss on the benefit of the carefully negotiated bargain.

17.    Mercer's strategy is intended to further its goal of building a single operating model that has scale, national brand awareness, and the ability to provide a consistent high-quality customer experience across offices and states.  Mercer is a fully institutionalized business and, to that end, Mercer acquires nothing less than 100% of the outstanding ownership interests or operating assets of each of its targets.

**Mercer's Protectable Interests**

18.    Mercer maintains robust and confidential information on its existing and prospective clients, including client identities, biographical information, risk tolerance, investment preferences, financial plans, tax returns, estate plans, insurance needs, and all other investment and performance information, both for investments and assets held by Mercer and for those at other financial institutions ("Mercer Confidential Client Information").

19.    Mercer takes substantial steps to protect this high-value Mercer Confidential Client Information regarding its existing and prospective clients. These steps include entering into strict confidentiality agreements with its employees (described below). In addition, Mercer maintains the database that stores its Mercer Confidential Client Information protected with a password and login requirement so that only authorized Mercer employees can access the information. Mercer also locks and protects with security codes all cabinets and rooms containing hard copies of client files. All laptops' hard drives are encrypted, and the employees' laptops and personal electronic devices (e.g., smart phones) are required to be password protected. Mercer limits each Wealth Advisor's access to client information to only that information relating to clients that the Wealth Advisor is responsible for servicing.

20.     Further, Mercer's legal and compliance departments train and educate employees on protecting Mercer Confidential Client Information in order to safeguard this valuable asset and comply with governing Securities and Exchange Commission privacy regulations.  Mercer also instructs its employees about the importance of maintaining the confidentiality of Mercer proprietary information, including Mercer Confidential Client Information, through its employee handbook and other documents outlining Mercer's policies and procedures.

21.     In all, Mercer invests millions of dollars in obtaining clients and protecting Mercer Confidential Client Information.

**<u>Crowley's Employment History with Mercer</u>**

22.     In 2020, Mercer acquired Crowley's prior firm, AFA, along with AFA's client lists, client relationships, and all other rights and properties.

23.     In connection with its acquisition of AFA, Mercer agreed to hire Crowley as a Wealth Advisor, and Crowley agreed to undertake a number of contractual obligations to Mercer.  Specifically, as a condition of his employment, Crowley signed the RCA and EA, both of which were dated December 21, 2020. Ex. A.

24.     The agreements took effect on January 1, 2021.

25.    Crowley resigned his employment with Mercer by letter dated July 30, 2021.  Ex. B.  Crowley's resignation notice indicated that he had already retained counsel, Corey S. Kupfer, Esq. of Kupfer & Associates, PLLC, Rye Brook, New York, in case "there are any legal matters that require [Crowley's] attention."

26.    The terms of the RCA survive the termination of Crowley's employment with Mercer.  Ex. A at 14 (§ 17 of RCA).

27.    On August 10, 2021, Mercer contacted Mr. Kupfer to advise him of Crowley's ongoing obligations under the RCA, including the nonsolicitation and confidentiality covenants contained therein, and to demand the return or destruction of any Confidential Information that remained in Crowley's possession, custody or control.

28.    The same day, Mercer also contacted the Director of Operations and Compliance at Crowley's new employer, Veracity Capital, to advise the company of Crowley's ongoing obligations to Mercer and to provide a copy of the RCA for Veracity Capital's review.

29.    By letter dated August 24, 2021, the undersigned law firm advised Mr. Kupfer that Mercer had since discovered multiple actions by Crowley that appeared to violate his duties to Mercer and to exhibit Crowley's intention to solicit Mercer's

clients.  The letter demanded that Crowley immediately cease and desist from all such conduct.  Ex. C.

30.    In subsequent exchanges, Mercer provided Mr. Kupfer with details of Crowley's unlawful actions, including the fact that Crowley emailed a Mercer client list to his personal e-mail address and transferred Confidential Information from a Mercer computer to two non-Mercer USB drives.  Despite this, Mr. Kupfer continues to deny any wrongdoing by his client, even as Crowley continues to solicit Mercer's clients.

**Selected Provisions of Mercer's Agreements with Crowley**

31.    As part of his EA, Crowley undertook a duty of loyalty to Mercer.  Ex. A. at § 1.4 ("Employee shall loyally, conscientiously, and professionally do and perform all duties and responsibilities assigned by Employer and the Employee's supervisors.").

32.    As part of the RCA, Crowley acknowledged that he "has had or will have access to trade secret and confidential information related to the Company's business that Employee agrees to keep confidential at all times" and that "[s]uch confidential information includes, but is not limited to, any and all documents received or generated by Company; client lists, client records, [. . .] client and supplier contact information, client preference data, [. . .] information belonging to

or provided in confidence by any individual, client, supplier, trading partner or other person or entity to which the individual had access by reason of an individual's employment with the Company, or any other information that derives economic value from being confidential to or trade secrets of Company (hereinafter, 'Confidential Information')." Ex. A at 10, 11 (§ 5 of RCA).

33.    Crowley further agreed that he would not, "during or after the term of employment: (i) publish, disclose, or make accessible any Confidential Information or any part thereof, to any person, firm, corporation, or association or other entity for any reason whatsoever; or (ii) use or generate benefit from such information, except during employment with Company and for the benefit of Company, without prior written permission of the President of Company." Ex. A at 11 (§ 5(a) of RCA).

34.    Crowley further agreed to "return all tangible evidence of such Confidential Information [. . .] to Company prior to or at the termination of employment with Company." Ex. A at 11 (§ 5(b) of RCA).

35.    Crowley further agreed to "only access Company's Confidential Information on Company issued devices" and to "not access Company's Confidential Information from any personal or non-company issued device." Ex. A at 11 (§ 5(c) of RCA).

36.     Crowley further "promise[d] not to download, copy, write, list, or compile in any shape or form any contact information for any Company client or prospect, including clients he/she is personally servicing." Ex. A at 11 (§ 5(e) of RCA).

37.     Crowley also entered a nonsolicitation covenant by which he agreed that "during his/her relationship with Company and for a period of twenty-four (24) months after termination of that relationship, whether voluntary or involuntary, with or without cause, Employee will not, directly or indirectly, [] solicit or counsel any existing, prospective or former client or referral source of Company regardless of such person's or entity's location, to terminate any business relationship with Company and/or commence a similar business relationship with any other individual or business entity." Ex. A at 9 (§ 2 of RCA).

38.     Crowley "expressly acknowledge[d] that in order to solicit a customer or client of Company, [he] would be using information considered by Company to be Confidential Information and/or other trade secrets.    Further, [Crowley] acknowledge[d] and agree[d] that if [Crowley] contacts any client or prospect on or after the date that [Crowley's] employment relationship with Company is terminated, such conduct shall establish a presumption that contact with each client and/or prospect was made by means of both (i) downloading, copying, writing,

listing, or compiling Confidential Information and/or other trade secrets, and (ii) using such Confidential Information and/or other trade secrets in material breach of this Agreement." Ex. A at 11 (§ 5(f) of RCA).

## Crowley Misappropriates Mercer's Trade Secrets and Wrongfully Solicits Clients Away From Mercer

39.    While Crowley was still employed at Mercer, he set out to misappropriate Mercer's trade secret Confidential Client Information to solicit Mercer's clients to his new firm.

40.    Crowley's attempts to solicit clients away from Mercer included providing Mercer clients with false information that, on information and belief, was intended to undermine their confidence in Mercer and its future ability to service its clients. For example, on information and belief, Crowley falsely told one or more clients that Mercer's physical offices would be moving to an office building that was farther away and less conveniently located for those particular clients. As a further example, on information and belief, Crowley falsely told one or more clients that the former principal of AFA, was going to retire imminently. Both such assertions are false, and Crowley knew them to be false when he made them.

41.    During his employ, Crowley sent Mercer's Confidential Client Information from his Mercer email account to his own personal email account. For example, on May 5, 2021, Crowley sent an email from his Mercer email account to

his personal email account.  The email included an attachment titled "Client List Feedback-CC TP List Schedule CC EDITs.xlsx," which contains Mercer's Confidential Client Information.  Crowley also copied Mercer's Confidential Information to two of his personal (i.e., non-Mercer) USB hard drives.

42.    Throughout June and July of 2021, Crowley contacted by email several of the Company clients identified in Mercer's Confidential Client Information, proposed meetings with them, and gave them his personal cell phone number.  These actions marked a distinct difference from how Crowley interacted with clients in the past and suggest that he was preparing to solicit these clients away from Mercer, even while still employed by the Company.

43.    During his last week of employment with Mercer, Crowley took a Company client to lunch and suggested to the client that he might be leaving Mercer and might be starting his own firm.  He also falsely suggested to the client that one of his superiors at Mercer is likely to retire soon, and that the Mercer offices would be moving somewhere less convenient to that client.

44.    On information and belief, Crowley has used and intends to continue using Mercer's Confidential Client Information in his efforts to solicit Company clients away from Mercer.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

45.    Mercer repeats and realleges the allegations set forth above as if fully set forth herein.

46.    Crowley has breached each of the contractual provisions described above.

47.    Crowley breached his contractual duty of loyalty by acting for his own benefit and to the detriment of Mercer.

48.    Crowley breached his contractual duty not to copy or use Mercer's Confidential Information other than for Mercer's benefit.

49.    Crowley breached his contractual duty not to solicit Mercer's customers.

50.    Crowley breached his contractual duty to return Mercer's Confidential Information to Mercer at the termination of his employment.

51.    Crowley's breaches have caused and will continue to cause both pecuniary and non-pecuniary damage to Mercer.

52.    Mercer is entitled to compensatory damages in partial redress of the harm caused by Crowley's breaches.

53.    Mercer is further entitled to recover its costs and attorneys' (including paralegal fees) fees.  *See* Ex. A at 13 (§ 12 of RCA).

54.    In addition to compensable harms, Crowley's breach also causes and has caused irreparable harm to Mercer.  Ex. A at 11 (§ 5(g) of RCA) ("Employee acknowledges and agrees that disclosure of Confidential Information by Employee would cause irreparable harm to Company.").

55.    Remedies at law for any breach of the covenants in the RCA are inadequate.  Ex. A at 13 (§ 9 of RCA).

56.    The harm to Mercer from failure to enjoin Crowley's continued breaches outweighs any harm to Crowley from enjoining them.

57.    The public interest is served by enforcing the terms of the EA and RCA.

58.    Mercer is entitled to injunctive relief to prevent further injury from Crowley's breaches of the RCA.  Ex. A at 11 (§ 5(g) of RCA) ("In the event there is a breach or a threatened breach by Employee of the provisions of this paragraph, Company shall be entitled to an injunction restraining Employee from disclosing in whole or in part such information, generating a benefit from such information, or rendering a service to any person, firm, corporation, association, or other entity, to whom such information has been disclosed.")); *id.* at 13 (§ 9 of RCA) ("Company shall be entitled to injunctive relief.")

## SECOND CAUSE OF ACTION
### (Misappropriation of Trade Secrets)

59.    Mercer repeats and realleges the allegations set forth above as if fully set forth herein.

60.    Mercer's Confidential Client Information is a trade secret under Ga. Code Ann., § 10-1-761(4).  For example, Mercer's Confidential Client Information includes Mercer's list of customers.

61.    Mercer's Confidential Client Information, including its customer list, derives actual economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  In particular, the exclusive use of Mercer's Confidential Client Information by Mercer provides value to Mercer by facilitating its financial advising business, while excluding competitors.

62.    Mercer makes reasonable efforts to maintain the secrecy of its Confidential Client Information.  These efforts include, but are not limited to, password-protecting the computer systems on which the Confidential Client Information is maintained.  *See* Ex. A at 11 (§§ 5(c) and 5(d)) (requiring Employee to only access Mercer's Confidential Information on Company issued devices and to ensure that all Company-issued devices are password protected).  The efforts further include, but are not limited to, requiring employees with access to

Confidential Client Information to agree to maintain the secrecy of such information. *E.g.*, *id.* at 10-11 (§ 5) ("Confidentiality Covenant").

63.    On information and belief, Crowley has contacted one or more of Mercer's clients or prospective clients on or after the date of termination of his employment relationship with Mercer.  Such conduct establishes a presumption that contact with each client and/or prospect was made by means of both (i) downloading, copying, writing, listing, or compiling Confidential Information and/or other trade secrets, and (ii) using such Confidential Information and/or other trade secrets in material breach of his RCA.  Ex. A at 11 (§ 5(f)).

64.    Crowley improperly acquired Mercer's Confidential Client Information by emailing the Confidential Client Information to his personal email account in violation of his duty to maintain the secrecy of the information.

65.    Crowley also acquired Mercer's Confidential Client Information properly in his capacity as a Mercer employee but then used Mercer's Confidential Client Information without Mercer's consent to support his effort to solicit clients away from Mercer, in violation of his duty to use the information for Mercer's benefit.

66.    On information and belief, Crowley will continue to use Mercer's Confidential Client Information without Mercer's consent in order to solicit clients away from Mercer unless enjoined.

67.    On information and belief, Crowley's misappropriation of Mercer's Confidential Client Information has damaged and will continue to damage Mercer.

68.    On information and belief, Crowley's misappropriation of Mercer's Confidential Client Information has unjustly enriched and will continue to unjust enrich Crowley.

69.    On information and belief, Crowley's misappropriation of Mercer's Confidential Client Information is willful and malicious.  On information and belief, Crowley was aware that Mercer maintains its Confidential Client Information as a trade secret and deliberately violated his contractual obligations to maintain its secrecy and to use it for Mercer's benefit.  On information and belief, Crowley has and will continue to use Mercer's Confidential Client Information to deliberately harm Mercer by soliciting customers away from Mercer.

## THIRD CAUSE OF ACTION
### (Tortious Interference with Business Relations)

70.     Mercer repeats and realleges the allegations set forth above as if fully set forth herein.

71.     Crowley improperly and without privilege, authorization, or legal excuse solicited Mercer's clients in violation of his EA and RCA.

72.     On information and belief, Crowley's solicitation of Mercer's clients was purposeful.

73.     On information and belief, Crowley's solicitation of Mercer's clients, including but not limited to Crowley's dissemination of false and misleading information about Mercer and his colleagues at Mercer, was done with intent to injure Mercer.

74.     On information and belief, Crowley's solicitation of Mercer's clients and/or prospects has induced one or more third parties to decline to enter or discontinue their business relationships with Mercer.

75.     Crowley's improper solicitation of Mercer's clients has caused financial injury to Mercer.

## FOURTH CAUSE OF ACTION
### (Tortious Interference with Contract)

76.   Mercer repeats and realleges the allegations set forth above as if fully set forth herein.

77.   Crowley improperly and without privilege, authorization, or legal excuse solicited Mercer's clients in violation of his EA and RCA.

78.   On information and belief, Crowley's solicitation of Mercer's clients was purposeful.

79.   On November 9, 2020, Mercer acquired AFA, when both parties executed an Asset Purchase Agreement.

80.   On information and belief, Crowley was aware of the Asset Purchase Agreement between AFA and Mercer on or shortly after November 9, 2020.

81.   Under the Asset Purchase Agreement, AFA represented that it "has taken those commercially reasonable steps necessary to maintain the confidentiality of its client or customer lists and client or customer information, trade secrets, and other Proprietary Rights."

82.   The Asset Purchase Agreement required AFA to assign its Proprietary Rights to Mercer.

83.   In connection with its acquisition of AFA, Mercer agreed to hire Crowley as a Wealth Advisor, and Crowley agreed to undertake a number of

contractual obligations to Mercer. Specifically, as a condition of his employment, Crowley signed the RCA and EA, both of which were dated December 21, 2020. Ex. A.

84.    On information and belief, Crowley's dissemination of false and misleading information about Mercer and his colleagues at Mercer, was done with intent to injure Mercer, and to interfere with the Asset Purchase Agreement between AFA and Mercer.

85.    On information and belief, Crowley's solicitation of Mercer's clients and/or prospects was done with intent to injure Mercer, and to interfere with the Asset Purchase Agreement between AFA and Mercer.

86.    Crowley's solicitation of Mercer's clients and/or prospects has interfered with AFA's ability to fully assign its Proprietary Rights, including its client and customer lists to Mercer, and with Mercer's ability to obtain the full benefit of its Asset Purchase Agreement with AFA.

87.    Crowley's improper solicitation of Mercer's clients has caused financial injury to Mercer.

## FIFTH CAUSE OF ACTION
### (Breach of the Duty of Loyalty)

88.    Mercer repeats and realleges the allegations set forth above as if fully set forth herein.

89.    As a Mercer Wealth Advisor, Crowley owed certain fiduciary duties to Mercer including without limitation, the duty of loyalty.

90.    During his employment with Mercer, Crowley took actions that were intended to persuade clients of Mercer to terminate their association with Mercer, including, but not limited to, wrongfully accessing Mercer Client Confidential Information intending to use it to solicit Mercer's clients.

91.    In engaging in the misconduct described herein, Crowley breached his duty of loyalty to Mercer.

92.    Crowley's breach of the duty of loyalty has caused financial injury to Mercer.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

1.    Temporary and permanent injunctive relief against Crowley;

2.    Damages;

3.    Attorneys' fees and costs; and

4.     Such other and further relief as the Court deems just and proper.


Respectfully submitted, September 23, 2021


                              **McDERMOTT WILL & EMERY LLP**

                    By:   /s/  Shane Nichols
                          A. Shane Nichols
                          1180 Peachtree Street, NE, Suite 3350
                          Atlanta, GA 30309
                          Tel:  (404) 260-8535
                          Fax:  (404) 393-5260

                          Jason Gerstein (*pro hac vice* pending)
                          One Vanderbilt Avenue
                          New York, NY 10017
                          Tel:  (212) 547-5400
                          Fax:  (212) 547-5444

                          *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on September 23, 2021, I electronically filed the foregoing document in the Court's electronic case files ("ECF") system and have further served a copy of the Complaint on Defendant Crowley's attorney, Corey K. Kupfer, Esq., by the following means:

- Email to ckupfer@kupferlaw.com; and

- Mail to:

> Corey K. Kupfer, Esq.
> Kupfer & Associates, PLLC
> 800 Westchester Avenue, Suite 641 North
> Rye Brook, New York 10573

> _/s/ Shane Nichols_
> A. Shane Nichols