UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MERCER GLOBAL ADVISORS INC.,

        Plaintiff,

    v.

CHARLES CROWLEY,

        Defendant.

CIVIL ACTION NO.
1:21-CV-03932-JPB

## ORDER

    This matter is before the Court on Charles Crowley's ("Defendant") Motion for Summary Judgment [Doc. 31] and Mercer Global Advisors Inc.'s ("Plaintiff") Motion for Partial Summary Judgment and Permanent Injunction [Doc. 33]. This Court finds as follows:

## BACKGROUND

    This case involves an alleged violation of an employment agreement. Plaintiff provides financial planning, investment management and other financial services to individuals and businesses across the United States.[1] [Doc. 41-10, p.

---

[1] The Court derived the facts of this case from the parties' statement of facts and the responses filed thereto. The Court also conducted its own review of the record. In accordance with the Local Rules, this Court did not consider unsupported facts. The Court did, however, use its discretion to consider all facts that the Court deemed material after reviewing the record.

1].  On January 1, 2021, Defendant began working for Plaintiff as a Wealth

Advisor after Plaintiff acquired substantially all of the assets of Defendant's former

employer, Atlanta Financial Associates, LLC ("AFA").  Id.  As a condition of

being employed by Plaintiff, Defendant signed two different agreements:  (1) an

Employment Agreement and (2) a Restrictive Covenant Agreement.

    The Restrictive Covenant Agreement contained a Confidentiality Covenant

and a Nonsolicitation Covenant.  In pertinent part, the Confidentiality Covenant

stated the following:

> Employee recognizes and acknowledges that during the course of
> employment with Company, Employee has had or will have
> access to trade secret and confidential information related to the
> Company's business that Employee agrees to keep confidential
> at all times.  Such confidential information includes, but is not
> limited to, any and all documents received or generated by
> Company; client lists, client records, . . . client and supplier
> contact information, client preference data, . . . information
> belonging to or provided in confidence by any individual, client,
> supplier, trading partner or other person or entity to which the
> individual had access by reason of an individual's employment
> with the Company, or any other information that derives
> economic value from being confidential to or trade secrets of
> Company (hereinafter "Confidential Information").

[Doc. 33-4].  With respect to the Confidential Information, the Confidentiality

Covenant mandated that:

> Employee will not, during or after the term of employment:  (i)
> publish, disclose, or make accessible any Confidential
> Information or any part thereof, to any person, firm, corporation,

> or association or other entity for any reason whatsoever; or (ii)
> use or generate benefit from such information, except during
> employment with Company and for the benefit of Company,
> without prior written permission of the President of Company.

Id.

The Confidentiality Covenant also provided that "Employee shall return all tangible evidence of such Confidential Information . . . to Company prior to or at the termination of employment with Company"; "Employee shall only access Company's Confidential Information on Company issued devices . . . and shall not access Company's Confidential Information from any personal or non-company issued device"; and "Employee hereby promises not to download, copy, write, list, or compile in any shape or form any contact information for any Company client or prospect, including clients he/she is personally servicing." Id.

The Nonsolicitation Covenant stated the following:

> Employee agrees that during his/her relationship with Company
> and for a period of twenty-four (24) months after termination of
> that relationship, whether voluntary or involuntary, with or
> without cause, Employee will not, directly or indirectly, (a)
> solicit or counsel any existing, prospective or former client or
> referral source of Company regardless of such person's or
> entity's location, to terminate any business relationship with
> Company and/or commence a similar business relationship with
> any other individual or business entity; (b) accept or service,
> with or without solicitation, any business from any existing,
> prospective or former client or referral source of Company,
> regardless of such person's or entity's location.

Id.

In March 2021, just two months into Defendant's employment with Plaintiff, Defendant began speaking with John Rogers and Mike Mess from Veracity Capital ("Veracity") about potential employment.  [Doc. 41-10, p. 6]; [Doc. 41-8, p. 2]. Veracity made Defendant an offer of employment in May 2021, which Defendant accepted.[2]  [Doc. 41-10, p. 6].

On May 5, 2021, Defendant sent a client list to his personal e-mail account. Id. at 7.  The client list included the names of the clients Defendant serviced while he was employed by Plaintiff.  [Doc. 33-13, p. 112].  It also included the service level (i.e., whether in an advisory capacity or wealth management capacity), the meeting frequency, the meeting preference (i.e., in person or over the phone) and how often personal assistance was required.  [Doc. 34-1].  Defendant testified that he never accessed the e-mail or its attachments after sending it.  [Doc. 44-1, p. 27]. Moreover, Defendant asserted that he sent the e-mail in connection with a presentation that he was giving to other employees.  [Doc. 31-1, p. 8].

During May, June and July of 2021—the period of time after Defendant accepted a job at Veracity and was still employed by Plaintiff—Defendant was in contact with all of the clients that he serviced for Plaintiff.  Specifically, Defendant e-mailed his personal cell phone number to all of the clients and personally met

---

[2] The exact date of the acceptance is unknown.

with at least some of them.  [Doc. 37, p. 77].  In two of those client meetings, Defendant told the client that he was leaving or considering leaving his employment with Plaintiff.  [Doc. 37, p. 56]; [Doc. 33-13, p. 37].  He did not tell those clients where his new employment would be.

Defendant resigned from Plaintiff on July 30, 2021, and his last day as an employee was on August 30, 2021.  [Doc. 37, p. 9].  After his final day of employment, Defendant contacted all forty-two clients that he serviced while he was Plaintiff's employee.  [Doc. 33-1, p. 6].  Defendant asserts that he called these clients to inform them that he had left his employment with Plaintiff and to apologize to the clients for not telling them before his last day that he was leaving. [Doc. 37, p. 38].  During these conversations, Defendant told some of the clients that he was working at Veracity.  Id.

Of the forty-two clients that Defendant contacted after he left his employment with Plaintiff, seven of them transferred their accounts to Defendant. [Doc. 41-10, p. 16].  Defendant presented affidavits from clients that transferred their business to Defendant and those who did not, and all of these clients maintained that Defendant never asked them to transfer their business. Conversely, Plaintiff presented evidence from Cathy Miller, a Senior Wealth Advisor and Senior Director for Plaintiff, who stated that some of the clients told

her that they were solicited by Defendant or that they were under the impression that Defendant was asking them to move with him to Veracity.[3]   [Doc. 36, p. 34].

Plaintiff filed suit against Defendant on September 23, 2021, asserting the following causes of action:  (1) breach of contract; (2) misappropriation of trade secrets; (3) tortious interference with business relations; (4) tortious interference with contract; and (5) breach of the duty of loyalty.  [Doc. 1].  On August 4, 2022, Defendant filed his filed his Motion for Summary Judgment.  [Doc. 31].  The same day, Plaintiff filed its Motion for Partial Summary Judgment and Permanent Injunction.  [Doc. 33].  The motions are now ripe for review.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[3] Defendant argues that the Court should not consider this evidence because it is hearsay. "The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'"  Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (footnote omitted) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'"  Id. at 1323.  Here, the statements are undoubtedly hearsay.  However, they can be reduced to admissible form if Plaintiff calls the clients to testify at trial.  See Lewis v. Residential Mortg. Sols., 800 F. App'x 830, 834 (11th Cir. 2020) ("The most obvious way to reduce hearsay to admissible form is to call the declarant to testify at trial.").  The Court will thus consider the client's statements to Ms. Miller in deciding this motion.

fact and the movant is entitled to judgment as a matter of law." A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Id. After the movant satisfies this initial burden, the burden shifts to the nonmovant who must then present evidence indicating that summary judgment is improper. Id. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.

1990) (citation omitted).  If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## ANALYSIS

Both parties moved for summary judgment.  Defendant moved for summary judgment as to each claim while Plaintiff moved for summary judgment as to its claims for breach of contract, misappropriation of trade secrets and breach of the duty of loyalty.[4]

### A.   **Breach of Contract**

Plaintiff alleges that Defendant breached both the Confidentiality Covenant and the Nonsolicitation Covenant.  The elements of a breach of contract claim in Georgia are as follows:  (1) a valid contract; (2) material breach of its terms; and (3) resultant damages to the party having the right to complain that the contract has

---

[4] The Court will note that Plaintiff's Motion for Partial Summary Judgment cites very little, if any, case law to support its arguments.  "In the future, all parties should thoroughly research and develop their arguments.  The premise of our adversarial system is that . . . courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them. When parties do not fully develop their arguments and support them with citation to legal authority, the burden upon the Court is improperly increased.  The onus is upon the parties to formulate arguments."  Perez v. Bureaus Inv. Grp. No. II, LLC, No. 1:09-cv-20784, 2009 WL 1973476, at *2 n.3 (S.D. Fla. July 8, 2009).

been broken.  TechBios, Inc. v. Champagne, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009).

    1.  Breach of the Confidentiality Covenant

    Both parties assert that they are entitled to summary judgment as to Plaintiff's claim that Defendant breached the Confidentiality Covenant.  Before analyzing whether a genuine issue of material fact exists, the Court must first address whether the Confidentiality Covenant is enforceable.  The language at issue states that:

> Employee recognizes and acknowledges that during the course of employment with Company, Employee has had or will have access to trade secret and confidential information related to the Company's business that Employee agrees to keep confidential at all times.  Such confidential information includes, but is not limited to, any and all documents received or generated by Company; client lists, client records, . . . client and supplier contact information, client preference data, . . . information belonging to or provided in confidence by any individual, client, supplier, trading partner or other person or entity to which the individual had access by reason of an individual's employment with the Company, or any other information that derives economic value from being confidential to or trade secrets of Company (hereinafter "Confidential Information").

[Doc. 33-4].

    In this case, Defendant contends that the Confidentiality Covenant is overbroad and unenforceable because Plaintiff's definition of "Confidential Information" covers "a nearly boundless volume of information" since the contract

defines "Confidential Information" to include "any and all documents received or generated by [Plaintiff]." [Doc. 31-2, p. 3]. In Defendant's view, because Plaintiff's written definition of "Confidential Information" "includes every single piece of paper or information that ever traversed any of its nationwide offices or e-mail accounts," Plaintiff did not make a "good faith attempt to protect its 'legitimate business interests'" or appropriately tailor the Confidentiality Covenant. Id. at 4-5.

Georgia's Restrictive Covenant Act ("RCA") governs the enforceability of restrictive covenants in employment agreements. O.C.G.A. § 13-8-50. In Georgia, there are four basic types of restrictive covenants: (1) non-competition; (2) non-solicitation of customers/clients; (3) non-recruitment of employees; and (4) non-disclosure of confidential information. Albany Bone & Joint Clinic, P.C. v. Hajek, 612 S.E.2d 509, 512 (Ga. Ct. App. 2005). Under the RCA, restrictive covenants will be enforceable so long as they are "reasonable in time, geographic area, and scope of prohibited activities." O.C.G.A. § 13-8-53(a). In the context of covenants that govern the non-disclosure of confidential information, the Georgia Court of Appeals has held that reasonableness hinges on two factors: "(1) whether the employer is attempting to protect confidential information relating to the business, such as trade secrets, methods of operation, names of customers,

personnel data, and so on; and (2) whether the restraint is reasonably related to the

protection of the information." Holland Ins. Grp., LLC v. Senior Life Ins. Co., 766

S.E.2d 187, 192 (Ga. Ct. App. 2014).

The Court finds that Plaintiff's definition of "Confidential Information" is

overbroad and unenforceable.  While the definition certainly includes some things

that may be considered "trade secrets" or "confidential information" under the

RCA, the definition also includes a plethora of information that is publicly

available from other sources.[5]  It also seems to include every piece of paper that

Plaintiff has ever generated.  Indeed, the definition encompasses "any and all

documents received or generated by [Plaintiff]."  In sum, the Court concludes that

the Confidentially Covenant as drafted prohibits the disclosure of information

unrelated to the protection of Plaintiff's legitimate business interests.  Nasco, Inc.

v. Gimbert, 238 S.E.2d 368, 369-70 (Ga. 1977).  Because Plaintiff essentially seeks

to ban disclosure of any and all information related to Plaintiff's business, the

---

[5] Plaintiff does not meaningfully argue that its definition of Confidential Information is
not overly broad.  Instead, it argues that the "[RCA] enables employers to protect
themselves against the risk that a former employee might appropriate customers."  [Doc.
44, p. 11].  Plaintiff also argues that client lists qualify as confidential information as
defined by the RCA.  While the Court agrees with both of these assertions, Plaintiff
ignores that the RCA requires restrictive covenants to be reasonable and that its definition
of "Confidential Information" includes not only client lists but "any and all documents"
received or generated by Plaintiff.

provision is overbroad and unenforceable.[6]  To the extent that Defendant seeks

summary judgment on this ground, the motion is **GRANTED**.  Accordingly,

Plaintiff's motion as to this issue is **DENIED**.

      2.  <u>Breach of the Nonsolicitation Covenant</u>

Both parties assert that they are entitled to summary judgment as to

Plaintiff's claim that Defendant breached the Nonsolicitation Covenant.  Before

analyzing whether a genuine issue of material fact exists, the Court must first

address whether the Nonsolicitation Covenant is enforceable.

Defendant contends that the entire Nonsolicitation Covenant is

unenforceable because a portion of the covenant prevents him from accepting

clients without solicitation.  As a general rule, "a nonsolicitation covenant may not

validly preclude the employee from accepting unsolicited business from customers

of his former employer." <u>Vulcan Steel Structures, Inc. v. McCarty</u>, 764 S.E.2d

458, 460 (Ga. Ct. App. 2014).  Indeed, "[t]he law is clear:  'solicitation requires

some type of affirmative action; therefore a nonsolicitation provision may not

contain a bar on the acceptance of business from unsolicited clients.'" <u>Id.</u> (quoting

<u>Waldeck v. Curtis 1000</u>, 583 S.E. 2d 266, 269 (Ga. Ct. App. 2003)).

---

[6] Given how overly broad this definition is, the Court is not willing to blue-pencil the
provision to make it enforceable.

The specific language at issue here states that

> Employee agrees that during his/her relationship with Company
> and for a period of twenty-four (24) months after termination of
> that relationship, whether voluntary or involuntary, with or
> without cause, Employee will not, directly or indirectly . . .
> accept or service, *with or without solicitation*, any business from
> any existing, prospective or former client or referral source of
> Company, regardless of such person's or entity's location.

[Doc. 33-4] (emphasis added).  The plain language of the covenant bars Defendant

from accepting any business from any former client, regardless of whether he

solicited the business.  Because this covenant prohibits not only the solicitation of

former clients but also the acceptance of business from unsolicited former clients,

regardless of who initiated the contact, it is unreasonable and unenforceable.

Although the Court finds that this provision of the Nonsolicitation Covenant

is unenforceable, the inquiry does not end there because in Georgia, "a court may

modify a covenant that is otherwise void and unenforceable so long as the

modification does not render the covenant more restrictive with regard to the

employee than as originally drafted by the parties."  O.C.G.A. § 13-8-53(d).  In

other words, courts are permitted to blue-pencil covenants so that they conform

with Georgia law.  The decision to blue-pencil a covenant is committed to the

discretion of a trial court.  Belt Power, LLC v. Reed, 840 S.E.2d 765, 770 (Ga. Ct.

App. 2020).  The Court will exercise its discretion in this case and excise the words

"or without" from the Nonsolicitation Covenant.[7]  With the removal of the words, the Nonsolicitation Covenant is valid and enforceable.  See Cap. Inventory, Inc. v. Green, No. 1:20-CV-3224, 2021 WL 2451508, at *2 (N.D. Ga. May 12, 2021) (striking the "or accept" language because Georgia law—both before and after the advent of blue-penciling—strongly disfavored post-employment restrictions on accepting unsolicited business).

In this case, both parties argue that no genuine issue of material fact exists as to whether Defendant solicited clients.  In other words, Defendant contends that it is undisputed that he did not solicit clients while Plaintiff contends that it is undisputed that Defendant did solicit clients.  The Court disagrees with both parties.  Defendant presented evidence in the form of his own deposition and declaration that he did not solicit any of Plaintiff's clients.  He also presented declarations from some of the clients who swore under oath that they were not solicited by Defendant.  Plaintiff, on the other hand, presented evidence that after Defendant resigned his employment with Plaintiff, Defendant contacted forty-two

---

[7] The provision now reads as follows:  Employee agrees that during his/her relationship with Company and for a period of twenty-four (24) months after termination of that relationship, whether voluntary or involuntary, with or without cause, Employee will not, directly or indirectly . . . accept or service, with ~~or without~~ solicitation, any business from any existing, prospective or former client or referral source of Company, regardless of such person's or entity's location.

clients and told them that he was now employed by Veracity.  Plaintiff also

presented evidence that Defendant sent those clients his personal phone number.

Ultimately, seven of those clients moved their accounts to Veracity.  If this were

the only evidence that Plaintiff presented regarding solicitation, Defendant would

be entitled to summary judgment because the Court is not convinced that merely

calling a former client is solicitation.  As noted by another judge in this district:

> Surely one does not solicit someone by merely having a
> conversation.  Even mentioning that [he] was going to work for
> another [employer] cannot count as solicitation.  To solicit is to
> use some sort of salesmanship, to encourage and persuade
> another to do something.  Merely informing someone as to a
> change in circumstances does not qualify.

LifeBrite Lab'ys, LLC v. Cooksey, No. 1:15-CV-4309, 2016 WL 7840217, at *8

(N.D. Ga. Dec. 9, 2016).

Plaintiff did present more evidence, however.  In addition to the evidence

described above, Plaintiff also presented evidence from Ms. Miller, who worked

for Plaintiff.  She testified that she spoke with several clients, and they informed

her that Defendant asked them to transfer their business to Veracity or otherwise

solicited them.  Because a genuine issue of material fact exists as to solicitation,

neither party is entitled to summary judgment on this issue.  To the extent that the

motions seek summary judgment on this ground, the motions are **DENIED**.

**B.**   <u>**Violation of the Georgia Trade Secret Act**</u>

Count 2 involves the Georgia Trade Secret Act ("GTSA").  Both parties moved for summary judgment as to this count.  To obtain relief under the GTSA, a plaintiff must demonstrate that it had a trade secret and that the opposing party misappropriated that trade secret.  <u>Wachovia Ins. Servs., Inc. v. Fallon</u>, 682 S.E.2d 657, 662 (Ga. Ct. App. 2009).  The GTSA defines "misappropriation" to mean:

> (A)   Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B)   Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> > (i)   Used improper means to acquire knowledge of a trade secret;
> >
> > (ii)   At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:
> >
> > > (I)   Derived from or through a person who had utilized improper means to acquire it;
> > >
> > > (II)   Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> > >
> > > (III)   Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

O.C.G.A. § 10-1-761(2).  Misappropriation thus falls into two broad categories: improper acquisition, under § 10-1-761(2)(A), and improper use or disclosure, under § 10-1-761(2)(B).

In its Complaint, Plaintiff alleged that Defendant "improperly acquired Plaintiff's Confidential Information by e-mailing the Confidential Client Information to his personal email account in violation of his duty to maintain the secrecy of the information."[8]  [Doc. 1, p. 18].  Plaintiff alternatively alleged that Defendant properly acquired the Confidential Client Information and then improperly used that information "without [Plaintiff's] consent to support his effort to solicit clients away from Plaintiff."  Id.

The Court will first address improper acquisition.  Plaintiff asserts that Defendant improperly acquired the client list because he e-mailed it to his personal e-mail account in violation of the Confidentiality Covenant.  As previously explained, the Confidentiality Covenant is unenforceable.  Because the Confidentiality Covenant is unenforceable, the Court concludes that Defendant could not have improperly acquired the client list.  Ultimately, any misappropriation claim premised on the violation of the unenforceable Confidentiality Covenant necessarily fails.  To the extent that Defendant seeks summary judgment on the basis that he did not misappropriate a trade secret by

---

[8] Because the Confidentiality Covenant is unenforceable as previously explained, Defendant is entitled to summary judgment to the extent that Plaintiff's GTSA claim is based on improper acquisition.

improper acquisition, Defendant's motion is **GRANTED**.  Plaintiff's motion as to improper acquisition is **DENIED**.

The Court will next address improper use.  Defendant asserts that he is entitled to summary judgment because no evidence exists that he used the client list to contact any of the clients.[9]  Conversely, Plaintiff contends that Defendant used the list to contact the clients.  A genuine issue of material fact exists as to this issue.  Plaintiff presented evidence that Defendant sent an e-mail with Plaintiff's client list to his personal e-mail account in May 2021.  Plaintiff also presented evidence that after he resigned his employment, Defendant contacted forty-two clients—the same clients that were on the list.  According to Plaintiff, Defendant had no legitimate reason to e-mail this sensitive material to his personal e-mail account other than to use it to contact the clients.  Defendant, on the other hand, presented evidence explaining why he e-mailed himself the list.  Defendant asserted that he e-mailed himself the client list not to solicit clients in the future, but in connection with a work presentation that he did while he was employed.  Defendant also presented evidence that he never even opened the e-mail that went to his personal account.  Based on this evidence, a jury could find that Defendant

---

[9] Defendant also argued that he is entitled to summary judgment because no evidence exists that he solicited clients.  The Court has already explained that a genuine issue of material fact exists as to solicitation.  As such, the Court will not address it a second time.

did not e-mail himself the client list in order to use it to obtain clients. A jury could alternatively find that he e-mailed himself the client list so that he could contact his former clients once his employment with Plaintiff ended. Given the different conclusions and inferences that a jury could make from these facts, the parties' motions for summary judgment as to this issue are **DENIED**.

### C.   <u>Tortious Interference with Business Relations & Tortious Interference with Contracts</u>

Plaintiff brought claims for both tortious interference with business relations and tortious interference with contracts against Defendant. Although different torts, tortious interference with business relations and tortious interference with contracts share common elements. To prevail on either tort, a plaintiff must show that the defendant: (1) "acted improperly and without privilege;" (2) "acted purposefully and maliciously with the intent to injure;" (3) "induced a third party not to enter into or continue a business relationship with the plaintiff;" and (4) "caused the plaintiff some financial injury." <u>Meadow Springs, LLC v. IH Riverdale, LLC</u>, 747 S.E.2d 47, 50 (Ga. Ct. App. 2013).

Defendant asserts that he is entitled to summary judgment as to these claims because he did not act without privilege. Acting without privilege means "that the defendant was an intermeddler or 'stranger' to the business relationship at issue." <u>ASC Constr. Equip. USA, Inc. v. City Com. Real Est., Inc.</u>, 693 S.E.2d 559, 564

(Ga. Ct. App. 2010).  Significantly, "'[o]ne is not a stranger to the contract just because one is not a party to the contract.'"  Feldman v. Am. Dawn, Inc., 849 F.3d 1333, 1344 (11th Cir. 2017) (quoting Mabra v. SF, Inc., 728 S.E.2d 737, 739-40 (Ga. Ct. App. 2017)).  Indeed, "[p]arties to an 'interwoven contractual arrangement' and parties that have a 'direct economic interest in or would benefit from a contract with which they are alleged to have interfered' are not strangers to the contract or relationship."  Id. (quoting Mabra, 728 S.E.2d at 740).  Particularly relevant here,

> [t]he Georgia Court of Appeals has ruled that an arcade game salesman, for example, was not a stranger to a business relationship between his former employer and several of its clients despite his solicitation of those clients for his *new* employer because the salesman had developed relationships with those clients when he worked for his previous employer.

Id.  Ultimately, the Georgia Court of Appeals determined that the arcade game salesman could not be a stranger to the contracts involving customers that he personally serviced.  Tom's Amusement Co. v. Total Vending Servs., 533 S.E.2d 413, 417 (Ga. Ct. App. 2000).

In this case, Defendant argues that he was not a stranger to the contracts or business relationships at issue because he is accused of soliciting clients to Veracity that he previously serviced while he was employed by Plaintiff.  Plaintiff does not attempt to distinguish the case law set forth above or address it in any

way.  Instead, Plaintiff merely argues that "[b]y soliciting and transferring [Plaintiff's] clients to [Veracity], [Defendant] acted improperly and without privilege to purposefully and maliciously interfere with the business relations between [Plaintiff] and its clients."  [Doc. 44, p. 26].

As stated above, Georgia law is clear that a former employee of a firm cannot tortiously interfere with the business or contractual relationship between his former employer and those clients he personally serviced while working for the former employer.  Because Defendant is accused only of soliciting those clients that he serviced, the Court finds that Defendant is entitled to summary judgment. Thus, to the extent that Defendant seeks summary judgment as to the tortious interference claims, the motion is **GRANTED**.

### D.    <u>Breach of the Duty of Loyalty</u>

In Count 5, Plaintiff alleges that Defendant breached the duty of loyalty. Both parties moved for summary judgment as to this count.  Defendant asserts that because this claim is based on his alleged wrongful access to trade secrets or confidential information, the claim is preempted by the GTSA.

The GTSA, which contains a preemption provision, "preserves a single tort cause of action under state law for misappropriation and eliminates other state causes of action founded on allegations of trade secret misappropriation."  <u>Opteum</u>

Fin. Servs., LLC v. Spain, 406 F. Supp. 2d 1378, 1380 (N.D. Ga. 2005); see O.C.G.A. § 10-1-767(a) (stating that the GTSA supersedes "conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret"). The Georgia Supreme Court has held that the "GTSA preempts claims that rely on the same allegations as those underlying the plaintiff's claim for misappropriation of a trade secret." Robbins v. Supermarket Equip. Sales, LLC, 722 S.E.2d 55, 58 (Ga. 2012). In deciding whether claims are preempted, "the key inquiry is whether the same factual allegations of misappropriation are being used to obtain relief outside the GTSA." Id.

The issue before the Court is whether Plaintiff's claim for breach of the duty of loyalty is based on the same facts that comprise the trade secret misappropriation claim. If the claims are based on the same facts, the GTSA will supersede the claim.

In its misappropriation claim, Plaintiff alleged that its Confidential Client Information is a trade secret. Plaintiff further alleged that after Defendant acquired the Confidential Client Information, he used it "to support his effort to solicit clients away from [Plaintiff]." [Doc. 1, p. 18]. Similarly, in its claim for breach of the duty of loyalty, Plaintiff alleged that Defendant breached his duty when he "wrongfully access[ed]" the Confidential Client Information "intending to use it to

solicit [Plaintiff's] clients." [Doc. 1, p. 23]. The focus of both of these claims are on Defendant's alleged use of the Confidential Client Information to solicit clients away from Plaintiff.

In its response brief, Plaintiff asserts that it has sufficiently alleged conduct for this claim that is distinguishable from what it alleged in support of its GTSA claim. Instead of directing the Court to allegations in the Complaint, however, Plaintiff referenced evidence obtained during discovery. Specifically, Plaintiff argued that during the last three months of his employment, Defendant arranged meetings with Plaintiff's clients, sent his cellular telephone number to certain clients and used his position as a wealth advisor to lay the groundwork for his subsequent efforts to solicit Plaintiff's clients. Importantly, none of these allegations were in Plaintiff's Complaint, and a "plaintiff may not introduce a new claim or theory—one not found in the complaint—in response to a motion for summary judgment," S.F. Residence Club, Inc. v. Baswell-Guthrie, 897 F. Supp. 2d 1122, 1200 (N.D. Ala. 2012).

Ultimately, after considering the allegations in the Complaint, the Court finds that both claims are clearly based upon the same purported trade secret and the solicitation of clients using that trade secret information. As such, the claim for breach of the duty of loyalty is preempted by the GTSA. Thus, to the extent that

Defendant seeks summary judgment as to the breach of the duty of loyalty claim, Defendant's motion is **GRANTED**.  To the extent that Plaintiff seeks summary judgment on the same claim, Plaintiff's motion is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 31] is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's Motion for Partial Summary Judgment [Doc. 33] is **DENIED**.  The parties are **HEREBY ORDERED** to file the Consolidated Pretrial Order required by Local Rule 16.4 within twenty-one days of entry of this Order.  The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal of the case or entry of default judgment.  In the event a Consolidated Pretrial Order is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the twenty-one-day period.

**SO ORDERED** this 15th day of March, 2023.

_____

**J. P. BOULEE**
United States District Judge